Good morning, Your Honors. May it please the Court, my name is Philip Switzer, and I represent the appellant in this case, Barry R. Gainsburg. Our remarks today will be briefed not only because the issues have been fully briefed, but also because I stand before you today functionally blind as a result of a vision impairment that's been going on for over a year. If I appear to ignore you, I'm not really doing that. I'm unable to read facial visual awareness, should the panel have any questions at any time during the presentation. With that said, the instant case asks this Court to consider four basic questions. The first of these is a binary question. Under the new Maryland Flexible Leave Act, does an employee's notice to take leave given to his or her employer in accordance with the employer's established leave policy constitute protected activity under the statute? And should the district court in this case have certified an original question of state law to the Court of Appeals of Maryland? Second, did the district court correctly interpret and apply the statute by ruling that Mr. Gainsburg's provision of advance notice in accordance with his employer's black and white stated policy in writing was not protected activity under the statute? In our brief, we note that the appellees draw a false dichotomy here. They draw a distinction between, quote, unquote, taking leave and, quote, unquote, giving notice of intention to take leave as if these are somehow two different activities. The only protected activity recognized under the plain language of the statute is taking leave in accordance with established employer policy. If the employer requires advance notice of the employee's need to use paid time off, then taking leave necessarily includes giving the employer the requested advance notice. There is no dispute here that the established employer policy written in a black and white document, the employer's policy manual, further was clearly that the employer requested a minimum of five days advance notice for the current. Mr. Gainsburg complied with his employer's policy. He was rewarded for that with termination only four days after he gave the requested notice. As further evidence of causality between those two very close in time events, there is also undisputed evidence in the record that the employer had made specific provision for Mr. Gainsburg to continue to function in his dual role as chief compliance officer and general counsel weeks after the date that he gave notice of his intention to use the requested leave to take care of his ailing father who at the time, I believe, had hepatitis. Let me ask you a question here. You didn't include an FMLA case, an FMLA plan. It's brought purely under state law, which is the Maryland Flexible Leave Act, and you want us to certify this or to say that the Maryland District Court abused its discretion in declining to certify, but you're a resident of Florida. Couldn't you, all this saying you want us to certify, couldn't you have brought this in state court in the first place? Well, my client is a resident of Florida, and yes, he could have brought it in state court, but we elected to bring it in federal court for two reasons, Your Honor. Number one, we thought that there may be an issue with respect to having the statute interpreted, and we thought that would be a faster track to actually get the statute interpreted by the Court of Appeals in Maryland. So, you know, there was a strategic decision made to bring it in federal court. Well, that's fine, but you're asking us to reverse the District Court for failure to certify. I don't think we've ever reversed a District Court for failure to certify, but the question I had is, since your client is a resident of Florida, whether he could have brought suit in state court to begin with, and because, I guess, the defendant is an in-state resident, it wouldn't have been removable. I don't think it would have been removable, Your Honor. I mean, you could have had what you're asking for. But it would have probably taken a lot longer time to do that. He would have... No. Coming here and requesting certification and everything, that's what would... Well, we actually expected, Your Honor, that our certification request would be honored right away. I mean, it's an original question of state law. Nobody has ever touched the law. There's been no interpretation since. And even Judge McCity, on the record, indicated that... Judge Niemeyer asked you a question. I'm sorry. I just said, does it need interpretation? Well, I think it's a fairly important question, Your Honor. Yes. It may be an important question, but doesn't the statute's language answer your question? Actually, it does. But Judge McCity determined, to the contrary, that acting in accordance with the employer's established policy was not protected under the statute. And that's what needs to change. I'm sure that esteemed opposing counsel, I'm sure that the statute Mr. Hemendinger, whose firm does a lot of advisory things for management side clients, is going to go out there and advise their clients now that if they want to ensure that any activities that may be protected under MFLA, if they want to avoid that, all they have to do is establish an advance notice policy. The employee gives advance notice, they get summarily terminated, and the employer suffers no liability. This is not the FMLA. This is a Maryland statute. No, I'm sorry. I misspoke. I meant to say MFLA. But yes. And the question of the District Court declining to certify the issue was presented in the context of, we just don't do that. We just don't do that. And I think the word that Judge McCity used was, we just don't certify questions casually. But there was never any explanation made on the record about why that would be a casual request. But your argument seems to be that the Maryland legislature took an ill-advised view on policy. You think when this statute was amended to say, has taken leave, that the Maryland legislature made a bad mistake and should have had the statute duplicate in all particulars the FMLA? Well, I mean, I could make... You do think the legislature messed up, don't you? I do think that there are a couple of problems with the statute, Your Honor, one of which is that DLLR isn't empowered to enact implementing regulations, which is why Darrell Van Dusen, who's the authority on the statute, says that judicial gloss is particularly important. And Judge McCity on the record... Said what? Judicial what? Judicial gloss on the statute is particularly important. Who says that? I mean, there has to be some interpretation. Who says that? Darrell Van Dusen, whose law review article on the new law we cite in the brief. Several points. That's fine, but you can't... I mean, we can't take the words of the statute and have... And rewrite them to say expressed an intention to take leave. But the words are there, which is comply with employer policy. If employer policy is to give advance notice, that's protected activity. That's our position. And it's consistent with what this particular employer inquired of this particular employee. If a false distinction between taking leave and giving advance notice to take leave in accordance with employer policy is permitted to stand, essentially, the statute's going to be eviscerated. And there will be no protection because every employer now will simply put out an advance leave requirement, advance notice requirement for taking leave under the statute, at which point they'll have the option to pretty much do whatever they please with employees. What's your answer to the causation facts? The notion that the decision had long been made to terminate his employment and that indeed they actually identified somebody and that your client even knew about it? Well, they had not at the point in time hired someone. I think they had interviewed people. But Mr. Stebbin himself, post-termination, after Mr. Gaines' post-termination, generated a system-wide email saying that they had not hired anyone yet. They were in the process of reviewing candidates. But it seems like an almost insurmountable fact that his termination arose out of facts and circumstances that preexisted his announcement of using the year-end leave. In other words, this arose out of a review of his work in the chemistry with the president and all that. And that was long done. And so that it would be a near-impossible case to say he was now being terminated because he sought to convert leave at the end of the year. Well, I don't think that we say that it is necessarily a but-for, Your Honor. Well, it's a because is the word, right? Statute uses the word because. He was retaliated because. And the causation argument is that he was fired four days after he gave notice to take the leave. And he was also scheduled to be at corporate activities weeks after the termination decision was made. So there was undisputed evidence in the record that he was supposed to be participating in the holiday Christmas party. And they had made plane arrangements for him to fly up from Florida to Rockville. So there were things that were already in process to keep him there before he gave notice. When he gave notice then, the termination decision came swiftly and pretty much without notice. The other questions that we raised in the brief, I'll just address briefly the issue of summary judgment as to the service defect. We talk about the applicable FINRA rules and the SEC rules. I understand, but we're talking about an individual, right?  Mr. Stebbin? Yes. And was he ever served? He was served. He declined service. There were two copies. There were two copies of the complaint that were delivered by our process server. But John Grady, Corporate Counsel. Who were they handed to? They were handed to Corporate Counsel. Well, that's not Mr. Stebbin, is it? No, it's not. When can you serve an individual by serving his co-employee? Under the SEC and FINRA rules, we could have simply mailed it to him. We didn't have to. Did you mail it to him? No, we hand-delivered it. You didn't hand-deliver it to him, you gave it to a stranger, a person who's not authorized to receive his process. You gave it to the counsel. He's being sued in his individual capacity, right? I understand that, yes, Your Honor. And you never gave it to him, nor left it at his house, nor mailed it to him? We actually left it at his place of employment for him. But, you know, he refused to accept it. I don't see what law you're relying on to say that's effective service. Well, the SEC rules are clear that we don't have to personally serve him. So... Does it make a difference if all the claims against the defendants are not meritorious to begin with? No, it doesn't make a difference. But it does make a difference if they're reinstated, or if this court elects to remand. These aren't even SEC claims. These are not FINRA claims. These are claims of... This is a personal employment dispute between him and his company. Correct, there was a breach of contract claim, Your Honor. So, you know, this is a contract... That's an employment contract, right? Right. All right. So... The other issue that we raised in the brief is whether or not Mr. Gainsbourg was an employee at will, or whether he was entitled to his employment. Because it was... First, it said the contract that you pointed to said he's at will, can be terminated by either side at any time. But it was the employer's position that he was occupying a role of high importance as an attorney, including monitoring the performance of outside counsel and delivering information about their... What's that got to do with employee at will? In other words, employee at will is distinct from employee with a term. And he didn't have a specific term. He was hired subject to his wishing to get out, or the company's wishing to fire him. Well, under the recent... Release him. I'm sorry, Your Honor, I didn't mean to interrupt. No, go ahead. Under the recent Sullivan case in New York in 2012, which we cite in the brief, what Sullivan stands for is there has to be an inextricable link between the role of fiduciary, which he was as general counsel, and his role as the chief compliance officer. And looking at the law coming out of the New York courts as well, Mr. Gainsbourg clearly had that inextricable bind between his two roles. Thank you. May it please the court. The General Assembly, Maryland General Assembly, seems to have anticipated this case and amended the law to block it. As originally passed, the Maryland Flexible Leave Act prohibited retaliation against an employee who exercises rights under this section. That would make every employee who planned to use some vacation time to visit a relative who was not feeling well a member of a protected class. All of us who have older parents would fall into that class. The law drew criticism from employers because of its potential for generating litigation. So it was amended May 19, 2009, before the events in question. The language about exercising rights was deleted. And as amended, the statute prohibits retaliation because the employee has taken leave authorized by this section. We argued in the district court agreed that the language did not cover the plaintiff because he had not yet taken leave. As a matter of public policy, I think there is a reasonable explanation for this change in the law. I think it was intended to include claims exactly like this one. I mean, what else is there to the case given the language has taken leave and he hasn't taken leave? I don't think there is anything else on this count. There's an alternative grounds for affirming. There's the causation grounds. Yes. But if the statute has been amended to cover this in anticipation of a situation like this and it uses the words has taken leave and somebody hasn't taken leave. Then well, I think that's what I mean. What else is there? What there is is plaintiff's effort to have this sent over to the Maryland Court of Appeals and to try to get the statute rewritten by judicially. But as Judge Niemeyer said initially, is there any room for construction? I mean, if it was a close question, maybe, but no, I don't think the Court of Appeals would do that either. I mean, the Court of they would they would scratch their heads. They might say we don't even like what are they sending this thing over here for given the way the statute reads, right? I agree. I agree with that, Your Honor. I also think that you don't even necessarily have to reach the statute if you do not wish because the factual record wasn't developed until after we filed our motion to dismiss, but the factual record eventually developed the fact that the company had decided to terminate Mr. Gainsbourg before he put in this leave request. And he knew that the most telling evidence of that is the email he sends his friends where he's found the search advertisement for his own job. I don't plan to address, unless you have questions, the service of process issue. And the employment at will issue doesn't connect to anything in this case, besides which under any neither Maryland nor New York has said that compliance offers are exempt from the employment at will doctrine. That leaves the defamation came. They don't relate back. Right. They do not relate back. We say so. So, unless you have further questions, I will turn it back the remainder of my time. Okay. Thank you, Mr. Hemming. Mr. Schweitzer, you have some time remaining. Your Honor, it's the only thing I would say in addition to what I already said is that the plain language of the statute clearly does say that he has to take leave in accordance with employment policy, with his employer's policy. The employer's policy in this case was irrefutably that he had to give the advanced notice of doing it. So, you know, there has taken leave authorized under this section. But if you read the iteration, the latest iteration of the statute, Your Honor, and I don't have the excerpt here to read to you, but it clearly does say that he has to take leave in accordance with employer policy. And that is the key word. Those are the key words here. If, you know, if employer policy is to give advance notice of intention to take leave and he complies with employer policy, he should be protected. That's all I have. Thank you. Thank you, Mr. Weiss. I'll ask the clerk to adjourn court and then we'll come down and recouncil.
judges: William B. Traxler, Jr., J. Harvie Wilkinson III, Paul V. Niemeyer